[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
In this action the plaintiff Benita Bryan sets forth a cause of action for personal injuries allegedly sustained as a result of the alleged carelessness and negligence of several defendants including two hospitals, a physician, Dr. Martin-Lopez and a registered nurse, Ms. Piaseck.
In the complaint the last date of treatment by the defendants is alleged to be February 1991. The defendants have submitted an affidavit, which is uncontested, that at no time since February 21, 1991 have any of the named defendants rendered any medical care. The sheriff's return indicates this action was commenced on April 28, 1995, over four years since the date of the last treatment.
The above named defendants have moved for summary judgment claiming there is no genuine issue of material fact that this action is barred by the applicable statute of limitations, §52-584 of the general statutes.
The standards to be applied in deciding whether to grant a motion for summary judgment are well known. The court cannot decide a material issue of fact; it is not for the court to resolve factual disputes. The facts do not appear to be in dispute here. The plaintiff basically raises a fraudulent concealment issue to prevent the operation of the statute of limitations and has raised certain facts to support that claim in the form of two letters the plaintiff received, one in 1993 and the other in 1994. The defendants' position is not that these factual assertions are in any way disputed or that for some evidentiary CT Page 13782 reason they should not be considered by the court in deciding this motion. The defendants argue that even given these factual contentions the allegation of fraudulent concealment does not lie to prevent the granting of the motion for summary judgment. This is perhaps a too roundabout way of saying that the issue before the court is one of law that can be resolved by summary judgment procedure.
In her brief of August 10, 1995, the plaintiff claims to have begun her own independent investigation in 1992. In May of 1993 she received a letter from the State Department of Health Services indicating the defendant doctor, at the relevant times in question, could participate in a residency program but was not authorized to independently practice medicine. But the plaintiff seems to emphasize the importance of another document and in her August 10 brief refers to the fact that the plaintiff "did not reasonably discover the essential elements of her cause of action until 1994 (see the letter in response to her inquiry from Augustus O. Godette, M.D.)." The Godette letter of March 21, 1994 stated the failure to make the diagnosis of incompetent cervix was a significant departure from the usual and customary standard expected by an obstetrician. Such a diagnosis would have permitted a proper management of the pregnancy which would have included various periodic examinations and advice about appropriate physical exertion. The plaintiff could also have been offered a so-called cerclage procedure to retain the pregnancy. Dr. Godette went on to say that her present condition as a habitual aborter may have been avoided had the correct diagnosis been given and the cerclage procedure been performed.
The plaintiff argues then that since the Godette letter came to her attention in March 1994, her suit was brought only one year after she suffered actionable harm. She didn't discover the essential elements of her cause of action until March 1994 because these elements were fraudulently concealed from her by the defendant.
It is unclear to me why the plaintiff didn't begin her investigation until 1992 and when in 1992 that investigation began. It is also unclear why, if she thought there was a need for an investigation, she didn't get the Godette letter until March 1994. I believe the burden is on the plaintiff to establish these matters where a prima facie case for a statute of limitations defense is made out and the plaintiff purports to avoid it by a fraudulent concealment claim. Unexplained failure CT Page 13783 to or delay in initiating an investigation or perhaps lackadaisical efforts in pursing an investigation could provide grounds to prevent reliance on a fraudulent concealment rejoinder to a statute of limitation defense, Merly v. State,211 Conn. 199, 207 (1989). The burden to explain away these matters should fall on the plaintiff where by its own assertion it is admitted the investigation leading to the discovery of the fraudulent concealment occurred well within the limitations period.
But there are other problems with the fraudulent concealment position advanced by the plaintiff. This is an unfortunate case but frankly I don't see how I can avoid granting the defendants' motion for summary judgment in light of Lambert v. Stovall,205 Conn. 1 (1987). That case at pages 6-7 said as to the limitations period: ". . . the statute begins to run when the plaintiff discovers some form of actionable harm, not the fullest manifestation thereof . . . (the plaintiff) was aware of circumstances indicating that he had suffered a form of actionable harm and should have discovered the injury at that time. As the defendants note, the plaintiff made a variety of claims of negligence in their complaint. They include performing an abortion without consent, improper removal of placenta, failure to perform diagnostic tests or diagnose bowel irregularities, failure to properly treat gastrointestinal disturbance, failure to have adequate records, failure to obtain a consultation before proceeding with a delivery, failure to contact plaintiff's family before ending pregnancy, failure to assist in defeating onset of stomach problems, failure to render any necessary intervention upon birth to the plaintiff, injuring fetus while removing it from the womb, negligent use of medical instruments in abortion process.
As the defendants point out there is no claim that these facts were concealed and they would have provided a basis for the cause of action for malpractice to have been brought within the limitations period. Thus, cases like Wohlgemuth v. Meyer139 Cal.App.2d 236 (1956) and Risel v. Stamford Hospital,180 Conn. 314, 339 (1980), which stand for the proposition that physicians have an obligation to inform patients about pertinent information concerning their condition while certainly good law have little to say on the propriety of raising the doctrine of fraudulent concealment. Even if some facts were concealed other facts providing a basis for suit were not so that under such circumstances it is difficult to see what policy goal would be served by saying the limitations period doesn't commence until CT Page 13784 all possible information is gathered. On the contrary, a defendant is still protected by the ordinary running of the statute and the plaintiff could have brought suit anyway. AsLambert says at 205 Conn., page 6: ". . . the statute begins to run when the plaintiff discovers some form of actionable harm, not the fullest manifestation thereof."
I agree that Lambert should be carefully applied. That is, if the "concealed" information provides the basis for a separate cause of action independent from the cause of actions asserted in the original suit, the doctrine shouldn't apply. In other words, it would be unfair to apply Lambert to prevent reliance on a fraudulent concealment argument if the facts concealed couldn't properly be considered part of the original cause of action now claimed to be barred by the statute of limitations.[1] But that doesn't appear to be the case here.
Therefore, I don't appear to have any choice but to grant the defendants' motion for summary judgment.
Corradino, J.