[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Roberta Ann Sherwood, brings this action against Danbury Hospital, returnable July 9, 1996, claiming negligence arising out of a blood transfusion received at Danbury Hospital on April 19, 1985.
The facts surrounding the transfusion, and the plaintiff's 1985 admission to Danbury Hospital, are not in dispute.
On April 18, 1995, the plaintiff's treating physician, Dr. Dennis Ogelia, admitted her to Danbury Hospital where she underwent a posterior spinal fusion on April 19, 1985.
The plaintiff received four units of blood in connection with the surgery. The blood was provided to Danbury Hospital by the American Red Cross.
Roberta Ann Sherwood was discharged from Danbury Hospital on May 14 1985.
Nine years later, on September 1, 1994, following a routine blood test ordered by her physician, Dr. Micheline Williams, the plaintiff learned for the first time that she had contracted Human Immunodeficiency Virus (HIV). CT Page 14706
An investigation followed during which it was determined that the source of the plaintiff's HIV infection was contaminated blood given to her at Danbury Hospital during her April 19, 1995 surgery.
Following the granting of a motion to strike a count alleging a violation of the Connecticut Unfair Trade Practices Act (CUTPA) (Grogins, J.), the plaintiff filed a three count amended complaint dated January 22, 1998.
Count one alleges that Danbury Hospital was negligent in fifteen ways specified in the complaint, including providing blood contaminated with the HIV virus, failure to warn the plaintiff of the risks of contamination, failure to implement procedures to assure the quality of the blood, and the failure to inform the plaintiff of a "direct donation program."
The second count alleges a special fiduciary relationship between the parties, which the plaintiff argues continued to exist until the plaintiff first learned she was infected with the HIV virus.
Count three alleges that Danbury Hospital was aware that the plaintiff had a cause of action based upon the contaminated blood, but fraudulently concealed the cause of action from the plaintiff.
The defendant asserts that all of the plaintiff's claims are barred by the applicable statute of limitations, § 52-584 of the Connecticut General Statutes, and moves for summary judgment as to all counts.
The plaintiff counters that her cause of action is not time barred and advances five arguments to support her position:
1. Under the "continuing course of treatment" doctrine, the running of the three year statute of limitations and repose under both §§ 52-584 and 52-577 of the Connecticut General Statutes is tolled.
2. Her claims are not barred under the "discovery rule" which tolls the running of the statute of limitations until such time as an injury as been discovered. CT Page 14707
3. A "fiduciary relationship between the parties, tolls the running of the statute of limitations until such time as the HIV virus was discovered.
4. Roberta Ann Sherwood claims the three year statute of repose is tolled, pursuant to § 52-595 of the Connecticut General Statutes, because Danbury Hospital fraudulently concealed the existence of a cause of action from her.
5. Both §§ 52-584 and 52-577 are unconstitutional as applied to the facts of this case, and violate the plaintiff's rights guaranteed under Article First §§ 1, 6, 10 and 20 of the Constitution of the State of Connecticut.
STANDARD OF REVIEW
A trial court may appropriately render summary judgment when documentary and other evidence demonstrate that no genuine issue of material fact remains between the parties, and the moving party is entitled to a judgment as a matter of law. Barthav. Waterbury House Wrecking Co., 190 Conn. 8, 11 (1983);Daily v. New Britain Machine Co., 200 Conn. 562, 568
(1986).
Connecticut Practice Book § 17-49 provides that summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."
In deciding a motion for summary judgment, the trial court must view all of the evidence in the light most favorable to the nonmoving party. Home Ins. Co. v. Aetna Life CasualtyCo., 235 Conn. 185, 202 (1995). The burden is upon the moving party to show quite clearly what the law is and that it excludes any real doubt as to the existence of any genuine issue of material fact. Fogarty v. Rashaw, 193 Conn. 442, 445
(1984); Yanow v. Teal Industries. Inc., 178 Conn. 262,268 (1979).
The test to be applied is whether the party seeking summary judgment would be entitled to a directed verdict. United OilCo. v. Urban Redevelopment Commission, 158 Conn. 364, 380
(1969). CT Page 14708
CONTINUING COURSE OF TREATMENT DOCTRINE DOES NOT APPLY
The defendant claims that this action is barred by the statute of limitations applicable to medical malpractice, § 52-584.
Section 52-584 reads:
 No action to recover damages for injury to the person or to real or personal property caused by negligence or by reckless or wanton misconduct, or by malpractice of a physician, surgeon, dentist, podiatrist, chiropractor, hospital or sanatorium, shall be brought but within two years from the date when the injury is first sustained or discovered . . . except that no such action may be brought more than three years from the date of the act or omission complained of . . .
Section 52-577, the general statute of limitations applicable to tort actions, mirrors the repose provision of § 52-584:
 No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of.
The record reveals that suit was instituted on July 9, 1996, more than eleven years following the blood transfusion of April, 1985.
The plaintiff argues, however, that the statute of limitations is tolled through the application of the "continuous treatment doctrine" first recognized in Giambozi v.Peters, 127 Conn. 380 (1940).
In that case, a plaintiff became infected with syphilis as a result of a contaminated blood transfusion.
The court held that in situations where an injury was inflicted at the time of the operation, and was not occasioned by subsequent treatment or neglect, and there had been no fraudulent concealment, the period of limitations begins to run from the date of the wrongful act or omission. Giambozi v.Peters, supra, 384.
In holding that the claim of negligence against the physician CT Page 14709 who administered the blood transfusion was barred, the court noted: "[s]o long as the relation of physician and patient continues as to the particular injury or malady . . . and the physician continues to attend and examine the patient in relation thereto, and there is something more to be done by the physician in order to effect a cure, it cannot be said that treatment has ceased." Giambozi v. Peters, supra, 384.
The determination of whether the physician and patient relationship has terminated involves several factors: (1) the subjective view of the parties as to whether the relationship has terminated; (2) the length of the relationship; and (3) the frequency of the interaction. Blanchette v. Barrett,229 Conn. 256, 278 (1994).
To invoke the continuous treatment doctrine in this case, the plaintiff must present some evidence showing that the relationship between Danbury Hospital and the plaintiff had not terminated in May of 1985, upon her discharge.
She must further show that the defendant, Danbury Hospital, was negligent in one or more of the ways listed in the complaint, and that there was some form of treatment beyond 1985.
Even if Roberta Ann Sherwood could demonstrate negligence or a deviation of the standard of care applicable to Danbury Hospital or any agent, servant or employee in 1985, no evidence has been provided to indicate that the relationship continued after she was discharged in May of 1985.
Nor is there any evidence of treatment rendered subsequent to the plaintiff's discharge from the hospital following a posterior spinal fusion.
No evidence suggests that Danbury Hospital knew that the blood provided on April 19, 1985 was tainted until 1994.
In Blanchette v. Barrett, supra, the court refused to apply the continuous treatment doctrine, where there had been a failure to diagnose breast cancer, but no knowledge of the cancerous condition until four years later.
The plaintiff had argued that the physician who misdiagnosis a condition is under a continuing duty to warn. CT Page 14710
In disagreeing with the proposition, the Blanchette
court held that a duty to inform would only arise after the physician learned that the diagnosis was incorrect. To apply any other rule, the court reasoned, would effectively eliminate any statute of limitations in cases involving misdiagnosis.Blanchette v. Barrett, supra, 284.
The same rule must apply here, where the hospital was not aware that the plaintiff had been infected with the HIV virus during the 1985 posterior spinal fusion, and therefore could not have breached an ongoing duty to warn.
Although the statute of limitations is not tolled until a course of treatment has been completed; Cross v.Huttenlocher, 185 Conn. 390, 400 (1981); in this case, treatment was completed at the time of the transfusion, April, 1985.
Whether this action is governed by § 52-584 or § 52-777, the statute is not tolled by the continuous treatment doctrine.
"DISCOVERY RULE" NOT APPLICABLE IN CONNECTICUT
The plaintiff urges, as an alternative to the continuing treatment doctrine, that the court adopt a "discovery rule" for determining if the statute of limitations is tolled.
This rule which holds that the statute of limitations is tolled when the plaintiff discovers the essential elements of a cause of action has never been tolled in Connecticut.
It is contrary to the clear and unambiguous language of § 52-584 which prohibits the bringing of an action "more than three years from the date of the act or omission complained of."
The plaintiff's invitation to repeal and invalidate the repose provision of § 52-582 must be declined.
In construing a statute, a court must resist the temptation to assume the role of lawmaker. Instead, a court's proper function is to determine, within constitutional limits, what the General Assembly intended to do. Hall v. Gilbert and BennettManufacturing Co., Inc., 241 Conn. 282, 296-97 (1997). CT Page 14711
If there is to be a change in the public policy of this state based upon an unfair result occasioned by the statute of repose in § 52-584, that change must be fashioned through an act of the legislature, rather than a directive from this court.
No reason exists, constitutional or otherwise, to prevent the legislature from establishing a time period that runs from the date of the act or omission complained of, even though at that date no person has sustained damage, and therefore no cause of action has actually come into existence. Vilcinskas v.Sears. Roebuck Co., 144 Conn. 170, 174-75 (1956);Ecker v. West Hartford, 205 Conn. 219, 241 (1987).
The "discovery rule" cannot be employed to aid the plaintiff, Roberta Ann Sherwood.
FIDUCIARY RELATIONSHIP DOES NOT TOLL STATUTE OF LIMITATION
In count two of the amended complaint, the plaintiff seeks to toll the running of the statute of limitations by alleging that a special fiduciary relationship existed between her and the defendant, Danbury Hospital.
The affidavit of Dr. Elizabeth Donegan, an expert witness engaged by the plaintiff, offers the opinion that a special relationship existed between Robert Ann Sherwood and Danbury Hospital, and that the hospital possessed knowledge, skill and expertise superior to that of the plaintiff.
Assumimg and acknowledging the existence of a fiduciary relationship, the question is not whether that relationship can support a cause of action, but whether its mere existence is sufficient to toll the running of the statute of limitations.
Section 52-577 is the statute of limitations applicable to all tort actions other than those excepted by other statutes. Breach of fiduciary duty is controlled by § 52-577.Lambert v. Stovell, 205 Conn. 1, 4 (1987).
Section 52-577 is an "occurrence statute," meaning that the time within which a plaintiff may commence an action begins to run at the time the act or omission complained of occurs.S.M.S. Textile Mills, Inc. v. Brown, Jacobson, Tillinghast,Lahan King. P.C., 32 Conn. App. 786, 790 (1993). CT Page 14712
No court of this state has held that the mere existence of a physician and patient relationship is sufficient, in and of itself, to toll the running of the statute of limitations in situations involving a failure to warn of a failure to diagnose.
To toll the running of the statute of limitations under what is really a continuing course of conduct claim, there must be a breach of a duty which remained in existence, and must not have terminated prior to the commencement of the period allowed for bringing an action for such a wrong. Connell v.Colwell, 214 Conn. 242, 254-55 (1990); Fichera v. MineHill Corporation, 207 Conn. 204, 209 (1988).
The continuing duty is not the failure to warn or notify the plaintiff. It consists of either a special relationship between the parties giving rise to such a continuing duty, or some later wrongful conduct of a defendant related to the prior act.Connell v. Colwell, supra, 254-55.
Because there was no continuing treatment or ongoing relationship between Roberta Ann Sherwood and Danbury Hospital following her discharge in May of 1985, count two of the amended complaint cannot survive the defendant's motion for summary judgment.
NO EVIDENCE OF FRAUDULENT CONCEALMENT PRESENTED
In her third count, the plaintiff alleges that Danbury Hospital fraudulently concealed the existence of a cause of action from the plaintiff, Roberta Sherwood.
Unlike § 521-584 and § 52-577, the statute of limitation applicable to this count is a "discovery statute."
Section 52-595 of the Connecticut General Statutes reads:
 If any person, liable to an action by another, fraudulently conceals from him the existence of the cause of such action, such cause of action shall be deemed to accrue against such person so liable therefor at the time when the person entitled to sue thereon first discovers its existence.
To prevail on this claim, the plaintiff has the burden of showing that the defendant was aware of the facts necessary to CT Page 14713 establish a cause of action, and that those facts were intentionally concealed from her. Connell v. Colwell,supra, 250.
There are three elements to a cause of action for fraudulent concealment: (1) a defendant's actual awareness rather than imputed knowledge of facts necessary to establish a cause of action; (2) the defendant's intentional concealment of those facts from the plaintiff; and (3) the defendant's concealment of those facts for the purpose of obtaining delay in the filing of a complaint. Bartone v. Robert L. Day Co.,232 Conn. 527, 533 (1995).
The plaintiff must prove that the defendant was actually aware of facts necessary to establish a cause of action.Puro v. Henry, 188 Conn. 301, 311 (1982). It is not enough to show that it is more likely than not that the defendant concealed a cause of action. Knowledge must be shown by clear, precise and unequivocal evidence. Alaimo v. Rover,188 Conn. 36, 39 (1982); Bound Brook Association v.Norwalk, 198 Conn. 660, 666 (1986).
An examination of the pleadings, affidavits and other documents reveals no evidence that the defendant, Danbury Hospital, knew that Roberta Ann Sherwood was infected with the HIV virus prior to 1994.
Assuming all facts most favorably to the plaintiff, the only fact known to the hospital was that untested blood had been given to the plaintiff in April of 1985.
There is no evidence supporting any act of concealment, or any contact between the plaintiff's May, 1985 discharge and 1994.
A party opposing a motion for summary judgment must establish a factual predicate from which it can determine as a matter of law, that a genuine issue of material fact exists.Multi-Service Contractors, Inc. v. Vernon, 193 Conn. 446,452 (1984).
The plaintiff has failed to present any facts to support her claim of fraudulent concealment as alleged in count three of her amended complaint.
SECTIONS 52-584 AND 52-777 ARE CONSTITUTIONAL
CT Page 14714
The plaintiff further claims that both §§ 52-584 and52-577, as applied to the facts of this case, are unconstitutional, violating both the United States Constitution and the Constitution of the State of Connecticut.
She argues that Article First §§ 1, 6, 10 and 20 of the Constitution of the State of Connecticut are violated, if the statute of limitations is permitted to bar the plaintiff's cause of action.
Article First § 10 reads:
 All courts shall be open, and every person, for an injury done to him in his person, property, or reputation shall have remedy by due course of law and right and justice administered without sale, denial or delay.
Every presumption must be exercised in favor of the constitutionality of a statute. The party challenging the constitutionality of a statute, must prove its unconstitutionality beyond a reasonable doubt. FairCadillac-Oldsmobile Isuzu Partnership v. Bailey,229 Conn. 312, 316 (1994); Sassone v. Lepore, 226 Conn. 773,778-79 (1993).
Article First § 10 has been viewed as limiting the ability of the legislature to abolish common law and statutory rights which existed in 1918, when Article First § 10 was adopted, and which were incorporated in that provision by virtue of being established by law as rights, the breach of which precipitates as recognized injury. The legislature may restrict or abolish those rights only when it provides a reasonable alternative to the enforcement of a right. Ecker v. WestHartford, 205 Conn. 219, 234 (1987).
The plaintiff correctly argues that the ancient action of trespass on the case, the precursor of actions sounding in negligence, including medical negligence, existed at common law;Gentile v. Altermatt, 169 Conn. 267, 283-84 (1978), as did claims involving breach of a fiduciary duty.
The legislature retains the power to provide reasonable alternatives to the enforcement of such rights. When such reasonable alternatives are created, the legislature may restrict CT Page 14715 or abolish the incorporated common law or statutory rights.Daily v. New Britain Machine Co., 200 Conn. 562, 585
(1986); Gentile v. Altermatt, supra, 268.
In Sanborn v. Greenwald, 39 Conn. App. 289 (1995) (cert. denied, 235 Conn. 925), the Appellate Court confronted a claim that passage of § 52-577 unconstitutionally abridged the right to sue an attorney for legal malpractice.
The statute withstood that constitutional challenge in that the statute of limitations did not restrict or abridge the cause of action, it merely established the time period within which a plaintiff could assert that right. Sanborn v.Greenwald, supra, 304.
In this case, the applicable statute of limitations did not abolish the plaintiff's claim of negligence or medical negligence, as the claim is sometimes characterized.
By limiting the time for bringing an action, even through no injury may have been sustained, the legislature has not acted unconstitutionally. Vilcinskas v. Sears, Roebuck Co.,supra, 174; Sanborn v. Greenwald, supra, 305.
Instead, the legislature acted in accord with the two reasons advanced in support of a statute of repose such as that contained in § 52-584: (1) preventing the enforcement of stale claims, and allowing persons to be free from the uncertainty and anxiety of protracted claims after many years; and (2) preventing a defendant from being in a situation where, due to lapse of time, facts cannot be gathered or witnesses secured in order to mount a defense. Daily v. New Britain Machine Co., supra, 584.
Perhaps recognizing that Connecticut law does not permit the plaintiff to maintain an action, in light of the applicable period of repose, the plaintiff resorts to rhetoric, thundering that to deny her the right to sue is to "retreat into an Ivory Tower."
Ironically, it is the plaintiff who invites the court to occupy an Ivory Tower. She suggests that the fortress be utilized as the source of public policy pronouncements which are properly committed, under our system of ordered liberty, to another branch of government. CT Page 14716
In this Republic, unlike that envisioned by Plato, judges do not sit as Philosopher Kings in black robes.
The court does not possess the real or inherent power to ignore the collective will of the General Assembly, under the arrogant and misguided assumption that it should trample precedent, usurp legislative power, and demonstrate disdain for the democratic process, whenever a particular outcome in a particular case seems desirable.
The ends cannot be allowed to justify any means, however noble and virtuous those ends may appear in the context of a particular situation.
When a court aspires to the role of lawmaker, it imperils the legitimacy of the one power it does possess and must safeguard — the power of judgment.
The power with which the plaintiff seeks to invest this court, if established, might be used at some future time in a manner wholly consistent with the philosophy of judicial dominance, but in pursuit of an outcome which the plaintiff might not find so appealing.
If the "discovery rule" or the "fiduciary exception" urged by the plaintiff are to be accepted, that acceptance must result from action of the Connecticut General Assembly, and not the decree of a court.
The plaintiff further claims that the applicable statutes of limitation violate her rights guaranteed under Article First §§ 1, 6, and 20, and the Fourteenth Amendment of the Constitution of the United States.
She argues that the challenged statutes impact upon fundamental rights, and that analysis should proceed under the "strict scrutiny" test applicable in situations involving fundamental rights and suspect classifications.
Her argument is not persuasive.
Equal protection is not a license for courts to judge the wisdom, fairness or logic of legislative choices. In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental CT Page 14717 constitutional rights must be upheld against an equal protection challenge if there is any reasonable conceivable basis for the classification. Luce v. United Technologies/Pratt,247 Conn. 126, 144 (1998); D.A. Pincus Co. v. Meehan,235 Conn. 865, 879 (1996).
Challenges to statutes of limitation have been examined, using the rational basis analysis. Ecker v. WestHartford, supra (§ 52-555, wrongful death); Sanbornv. Greenwald, supra (§ 52-577, legal malpractice);Zapata v. Burns, 207 Conn. 496 (1998) (§ 52-584a, liability of architects and engineers).
The defendant's motion for summary judgment as to counts one, two and three of the amended complaint, dated January 22, 1998, is therefore granted.
Radcliffe, J.